GARY v. PEOPLE'S NATIONAL BANK.

1. G., the guardian of four infants, deposited a sum of money in bank to his credit "as guardian" ; and then died. *Held,* that the executor of G. was not entitled to recover from the bank the amount of this deposit, as it was no part of the assets of G's estate, but assets of the wards' estate. *Cases reviewed.*

2. The wards being infants, their failure to interpose and claim the fund for five years after the death of their guardian, cannot be imputed to them as laches nor justify the bank in paying to the executor.
MR. CHIEF JUSTICE SIMPSON, *dissenting*.

Before WITHERSPOON, J., Charleston, July, 1886.

The opinion fully states the case. The Circuit decree was as follows:

Upon the admitted facts in this controversy, the bank has no equity of its own to protect. It does not appear by the admitted facts that the estate of the deceased guardian is indebted to the wards of M. W. Gary above named. If the wards of M. W. Gary have any interest in the money deposited in bank, they have had ample time since the death of M. W. Gary to assert their right to the deposit, and have not seen fit to ask the aid of equity to enjoin the payment of the money deposited in bank to the executor of the deceased gurdian. The only question that can be considered in this controversy is as to the legal right of the executor of M. W. Gary to draw the money deposited by M. W. Gary, guardian.

According to Mr. Morse on *Banks and Banking* (page 25), the ordinary relations existing between a bank and its depositor is simply that of debtor and creditor. This author states that the original and every subsequent deposit is in the strict legal effect a *loan* by the depositor to the bank. In speaking of a deposit made in bank in the name of a *"general agent"* of an insurance company, the United States Supreme Court in the *National Bank* v. *Insurance Company*, 14 *Otto*, 66, say : "The contract created by the dealings in a bank account is between the depositor and the bank alone, without reference to the beneficial ownership of the money deposited. No one can sue at law for a breach of that contract, except the parties to it. There was no privity created by it, even upon the facts of the present case, between the bank and the insurance company. * * * A bank account, it is true, even where it is a trust fund, and designated as such by being kept in the name of the depositor as trustee, differs from other trust funds which are permanently invested in the name of the trustee, for the sake of being kept as such, for a bank account

is made to be checked against and represents a series of current transactions."

In referring to the form of checks to be drawn by depositors, Mr. Morse, on page 268, says : "But the duty of the bank is probably restricted to requiring a signature which shall correspond with the terms of the deposit account. If A B deposits money to the account of 'A B, trustee,' or 'A B, executor,' the bank is not bound to inquire or take notice of any fact as being intimated by these additional words." If M. W. Gary were living, the bank could require his signature to a check identical in terms with the credit on the books of the bank. The effect of the deposit in the name of M. W. Gary, guardian, is to affect the bank with knowledge of the character in which he held the money, so that if there were third parties beneficially interested in the fund, the bank might be restrained in equity by proceedings from dealing with the fund, as if it belonged to M. W. Gary absolutely, without reference to any trust or beneficial interest to which it was subject. *Bailey* v. *Finch*, 7 *Law Rep. Q. B.*, 34. The bank could not, therefore, have set off a debt due by M. W. Gary, individually, against this deposit, except to the extent that it could show that Gary had an interest in the deposit.

It was decided in this State in the case of *McColl and Wife* v. *Weatherly* (5 Strob., 72), that where a note was made payable to one as guardian for the hire of slaves of his ward, the legal title to the note was in the guardian, and, at his death, although he died insolvent, it devolved upon his administrator, to whom the money belonged, unless some right could be shown by the ward to receive it in opposition to the administrator. This case, it seems to me, sustains the right of the executor in this controversy. As already observed, the wards have taken no steps since the death of M. W. Gary to prevent the executor of the guardian from drawing the deposit, and whilst the wards are not parties to this controversy, they cannot be considered as opposing the right of the executor to draw the money deposited.

In *McColl* v. *Weatherly* it is said that the guardian is bound to maintain and educate his ward according to the ward's estate and position in society, and to enable him to do so the law gives the guardian, in virtue of his office, the right to receive the profits

of the ward's estate to indemnify him for the expense of the ward's maintenance and education. All the interest that the ward has in the profits is to have an account of his maintenance and education in proper form. There is nothing in the agreed statement of facts in this controversy to show that the money deposited by the guardian did not accrue from the profits of the ward's estate.

It is contended, on behalf of the bank, that the decision in *McColl* v. *Weatherly*, relied upon by the executor, is in conflict with the more recent decision in *McDuffie* v. *McIntyre* (11 *S. C.*, 551), in which it is held that a guardian is not possessed of any legal estate in his ward's chattels or choses. The point considered and decided in *McDuffie* v. *McIntyre* was as to the right of the guardian *to sell* choses, being a part of the corpus of the ward's estate. The court decided, that *as the legal title was in the ward*, the guardian could not sell without an order of court. In that case the right of the guardian to collect and disburse the income, profit, and credits of the ward's estate is also expressly recognized. It does not appear to me that there is any conflict in the decisions in the two cases above referred to.

The counsel for the bank cite Mr. Morse (page 276) as authority for the following position : "If a deposit account stands in the name of any person not as an individual, but in an official capacity, upon his decease, or upon the cessation of his official character, the property in the deposit, and with this the right to draw checks against it, will pass to his successor in office. Thus a deposit account to the credit of one as executor, does not pass to his own administrator upon his decease, but to the administrator *de bonis non* of the estate of the prior 'decedent.' " In *Seabrook* ads. *Williams* (3 *McCord*, 370), it was held that an administrator may bring action upon a bond given to his intestate as executor of a third person. With all due deference to Mr. Morse as authority on the subject of banks and banking, it seems to me our own decisions, and the decisions of the United States Supreme Court above referred to, establish a different rule from that laid down by Mr. Morse.

If the facts upon which this controversy is submitted presented any equities, either on behalf of the bank or the wards of M. W. Gary, the deceased guardian, I should feel inclined to

adopt the authority of Mr. Morse. But regarding the facts as agreed upon by counsel in this controversy between the executor and the bank, as involving alone the legal right of the executor to draw the money deposited in bank, I conclude, as matter of law, under the authority of our own decisions, as well as that of the United States Supreme Court above referred to, that William T. Gary, as executor of M. W. Gary, deceased, is entitled to draw the money deposited by "M. W. Gary, guardian," in the People's National Bank, of Charleston, S. C. In this view, I further conclude as matter of law, that said executor is entitled to draw interest on said deposit from the date of the demand made by said executor on the bank, to wit, from June 1, 1881.

It is therefore ordered and adjudged, &c.

*Mr. J. N. Nathans*, for appellant.

*Messrs. Lord & Hyde*, contra.

April 21, 1887. The opinion of the court was delivered by

MR. JUSTICE MCIVER. This was a controversy submitted without action under the provisions of the code. The facts, as agreed upon, are as follows: The late Martin W. Gary deposited in the People's National Bank $8,861.65 to his credit as guardian, which deposit was in fact made by said Gary as guardian of N. George Evans, John Gary Evans, Barnard B. Evans, and Mary Evans. On April 9, 1881, M. W. Gary died, leaving a will of which the plaintiff is the duly qualified executor. On June 1, 1881, the plaintiff duly notified the bank of his qualification as executor of M. W. Gary, and demanded payment of the money deposited to the credit of M. W. Gary as guardian. The bank declined to pay, on the ground that the money could only be drawn by the official successor of M. W. Gary, guardian, and that the check of the plaintiff, as executor, would not be a sufficient discharge of the bank. On January 2, 1886, four thousand dollars of the deposit was paid to the joint order of W. T. Gary, executor, and two of the wards, with the express understanding that such payment was to be without prejudice to any of the questions involved in the present controversy.

Upon these facts the following questions were submitted for the determination of the court : 1st. Had W. T. Gary, as executor of M. W. Gary, the right to draw out upon his check as executor the deposit standing in the name of M. W. Gary, guardian ? 2d. Is W. T. Gary, executor, entitled to interest on the deposit from the time payment was demanded and refused, to wit, June 1, 1881 ? The Circuit Judge decided both of these questions in favor of the plaintiff and rendered judgment accordingly ; and from this judgment defendant appeals, upon the ground that there was error in so deciding. The decision below seems to be based upon the idea that inasmuch as the *legal* title to the money on deposit was in M. W. Gary, his executor was alone authorized to draw it out, though the Circuit Judge seems to recognize the equity of those entitled to the beneficiary interest in the money to interpose for the protection of such interest. But as the wards, who were the persons entitled to the beneficiary interest, have not seen fit to interpose for the protection of their interests, and as the bank clearly has no equity to be protected, the executor, as holding the legal title, is entitled to draw the money.

It seems to us that due regard was not had to the fact that, in the eye of the law, M. W. Gary, as an individual, and M. W. Gary, as guardian, are two distinct and different persons, possessed of distinct and different rights. This distinction is important, and must be kept in mind throughout this discussion. Under this view, while the plaintiff is the executor of M. W. Gary, and as such has become the legal owner of all the personal assets of his testator, he is not the executor of M. W. Gary, guardian, and therefore has acquired no legal title to any assets which may have been in the hands of the said M. W. Gary as guardian during his life-time. Such assets belong to his wards, and do not descend to his executor.

It seems to be conceded in the authorities cited in the Circuit decree that if M. W. Gary had, in his life-time, undertaken to draw this money on his own individual check, the bank would have been justified in refusing payment, and could have required him to draw the check in his name as guardian ; and this clearly recognizes the distinction above pointed out. Now, if M. W. Gary could not, in his life-time, have drawn this money upon his

own individual check, it would seem to follow necessarily that his executor could not, after his death, draw the money; for certainly the executor could have no higher right or better authority than his testator. The whole question turns upon the inquiry, whether the money deposited in the bank to the credit of M. W. Gary, guardian, and not to the credit of M. W. Gary individually, constituted any part of the assets. of M. W. Gary's estate, or whether it was a part of the assets of his wards' estate in his hands as guardian. If it was the former, then, undoubtedly, the executor would be entitled to receive the money, to be administered according to the terms of the will from which he, derived his authority; but if the latter, the executor would have no right whatever to the money, as it would properly belong, both legally and equitably, to the successor of M. W. Gary in the office of guardian.

From what source the money in question was derived does not appear, but it does appear that M. W. Gary himself separated it from his own money and designated it as the money of his wards, by depositing it to his credit as guardian. He thereby distinctly declared that this money was not a part of his own assets, but was a part of the assets of his wards, in his hands as guardian; as much so as if he had sealed up the money in a bag and so marked it, which was afterwards found in his own safe, in which case it is clear that the executor would have no legal right to the money, as it constituted no part of the assets of his testator's estate, as shown by the testator's own act and declaration.

It is urged, however, that a deposit in a bank is in the nature of a loan to the bank, and the rights of the parties must be considered in that respect. Assuming this to be so, and looking at the transaction here brought in question, as if M. W. Gary had loaned this money to the bank and taken its note, payable to himself as guardian, let us inquire who, upon the death of M. W. Gary, would be entitled to the note—his executor or his successor as guardian. In 2 *Williams on Executors*, 1192 (2d *Amer. edit.*), it is said: "The absolute property of the goods must have been vested in the testator in order to make them assets in the hands of the executor. Therefore if testator takes a bond for another in trust, and dies, this is not assets in the

hands of his executor." This shows that if the deposit be regarded as a loan to the bank, secured by a note payable to M. W. Gary, as guardian, such note, not being a part of the assets of the testator, would not pass to the executor. This view is also supported by analogy drawn from the rule, now well settled in this State, that an administrator *de bonis non cum testamento annexo*, may sue for and recover, not only specific assets belonging to his testator, but also money, the substitute of such assets, for the purpose of paying his testator's debts or legacies, or accomplishing any other purpose indicated in the will.

It is true that it was at one time held, or rather stated (for the point was not really necessary to the decision of the case), in the case of *Smith* v. *Carrere* (1 *Rich. Eq.*, 123), that an administrator *de bonis non* could only recover from the personal representative of the deceased executor or administrator, such chattels or personal estate of the testator or intestate as remain *in specie*, and has no right to call him to account for any part of the estate which has been wasted or converted into money or other property by the deceased executor or administrator. But this doctrine was entirely repudiated by the Court of Errors, in the subsequent case of *Villard* v. *Robert* (1 *Strob. Eq.*, 393); and this case has been subsequently recognized by the Court of Errors in the case of *Rhame* v. *Lewis* (13 *Rich. Eq.*, 318), and repeatedly in other cases since that time. The rule thus settled rests upon the theory that although the legal title to a decedent's personal property passes to his executor or administrator, yet such title is not absolute, but is in trust, and hence upon the death of such executor or administrator, the property thus held in trust does not go to the personal representative of such executor or administrator, but goes to the administrator *de bonis non* of the original decedent, who may sue for and recover not only that which remains *iu specie*, but also the proceeds of that which has been converted by the original executor or administrator, for the reason that such property does not constitute a part of the assets of such deceased executor or administrator, but is a part of the assets of the original decedent.

As is said by Inglis, J., in *Rhame* v. *Lewis*, *supra*, at page 317: "If an administrator convert the whole of his intestate's

assets into money by collection and sale, and die, leaving the money so received distinguished and separated from his own in a packet indorsed so as to indicate that it is the proceeds of such conversion, would not the parcel of money so marked and identified be assets of the original intestate, to pass into the hands of him who shall be deputed to administer the yet *unadministered* estate? And would not equity enforce the right of such administrator *de bonis non* to the specific possession? * * * If, then, an administrator, under an order such as our law now requires, sell the estate of his intestate on a credit, taking bonds or notes, with sureties as directed, payable to him as administrator, and so distinguished from such as are his own, and die while the period of credit is yet unexpired, will not the administrator *de bonis non* of the original intestate be entitled in equity to a specific delivery of such securities (subject, of course, to a right to retain for any balance of advances or charges), to be by himself collected and applied in due course of administration, and to a transfer, if need be, of the legal title by the personal representatives of the deceased administrator, in order to enable him the more effectually to do this?" So we find it said in 1 *Williams on Executors*, 656: "If an executor receives money in right of his testator, and lays it up by itself, and dies intestate, this money shall go to the administrator *de bonis non*, being as easily distinguished to be part of the testator's effects as goods *in specie*."

Upon the principles settled by these authorities, it seems clear that the money deposited in the bank to the credit of M. W. Gary, guardian, whether considered in the light of a loan to the bank, secured by a note payable to M. W. Gary, guardian, or as money separated and set apart from M. W. Gary's own individual money, and designated as that of his wards, cannot be regarded as any part of the assets of testator's estate which would pass to his executor, and cannot therefore be by him drawn from the bank.

But again, suppose this money should be paid over to the plaintiff, and should afterwards through some fault on his part be lost, how could the wards hold the sureties on the guardianship bond responsible for such loss? They undertook for the good faith and prudent management of the guardian, and not for that of his exe-

cutor, and when sued by the wards they would be able to show that there was no default on the part of the guardian; that he had taken every prudent precaution to preserve this money for his wards by depositing it in a bank of good standing, in such a way as to designate it as his wards' money, and this would relieve him, as well as his sureties, even if the bank should afterwards fail. *Twitty* v. *Houser,* 7 *S. C.,* 153; *Crane, Boylston & Co.* v. *Moses,* 13 *Id.,* 561.

It only remains for us to consider the cases relied on by the Circuit Judge, as well as by the counsel for respondent, in support of the decision below. The first and strongest case is that of *McColl* v. *Weatherly,* 5 *Strob.,* 72. That was a case in which it became necessary to determine the conflicting claims of a ward and the administrator of her deceased guardian to the proceeds of a note taken by the guardian, during his life-time, payable to himself as guardian, for the hire of a slave belonging to his ward, which note had by some means passed into the hands of the ward after the death of the guardian. The court held that the administrator was entitled to the proceeds of the note, subject to a liability to account therefor to the ward. It will be observed that the note bore upon its face the evidence that it represented *the income* and not the *corpus* of the ward's estate ; and this circumstance seems to have been one of the main grounds upon which the conclusion reached by the court rested.

In delivering the opinion, Evans, J., uses this language (the italics being ours): "The guardian is bound to maintain and educate his ward according to her estate and position in society; and to enable him to do this the law gives him, in virtue of his office, a right to receive *the profits* of her estate to indemnify him for the expense of her maintenance and education. All the interest which the ward has *in these profits* is to have an account of the manner of the expenditure, in the proper forum." From this the conclusion was drawn that as the guardian, in his life-time, would have had the right to receive *"these profits,"* that is, the income of the ward's estate, for the purpose of reimbursing himself for such expenditures as he would have been required to make for the proper maintenance and education of the ward, which right

could not have been resisted by the ward, the same right passed
to his legal representative.

Some stress was also laid upon the fact that the guardian was
the *legal owner* of the note, and that *at law* his title passed to
the administrator.    It was conceded, however, that the rule in
equity might be different, as was held in the case of *Glass* v.
*Baxter*, 4 *DeSaus.*, 153, which case was subsequently recog-
nized in *Rhame* v. *Lewis, supra,* where it was held that a note-
payable to one Adams, which was shown to have been given to
secure the payment of purchases made at a sale of the personal
property of one Glass by Adams as his administrator, though
not on its face made payable to him as such, was not liable to
attachment as the property of Adams, but that the administrator
*de bonis non* of Glass was. entitled to the note.    But it must be
remembered that the case of *McColl* v. *Weatherly* was decided
when the jurisdictions of law and equity were kept entirely sepa-
rate and distinct, and were administered by distinct and different
tribunals.    Hence it not unfrequently happened that a party was-
deprived of the right to a claim or defence which was perfectly
good in equity, simply because it could not be enforced in a court
of law.

Now, however, under the reformed procedure, one of the prime
objects of which was to abolish distinctions of mere form of pro-
ceeding, and to administer justice according to the substantial
rights of the parties, regardless of the fact as to whether such
rights are denominated legal or equitable, a party cannot be
turned out of court, or his defence be disregarded, merely because
the facts upon which he rests his claim or defence do not entitle him
to relief at law, or because he is not entitled to relief in equity,
as the case may be; but as is said by Johnson, J., in *Crary* v.
*Goodman* (12 *N. Y.*, 266), and quoted with approval in *Parker &
Co.* v. *Jacobs*, 14 *S. C.*, at page 118 : "Since the enactment of
the code the question is, not whether the plaintiff has a legal
right or an equitable right, or the defendant a legal or an equit-
able defence against the plaintiff's claim, but whether, according
to the whole law of the land, applicable to the case, the plaintiff
makes out the right which he seeks to establish, or the defendant
shows that the plaintiff ought not to have the relief sought for."

So that even if the fact apparent on the face of the note in *Mc-Coll* v. *Weatherly*, and made one of the grounds of the decision, that the fund there in controversy was the *income* and not the *corpus* of the ward's estate, be entirely disregarded, and the case be regarded as deciding that even where it is not made to appear that the fund in controversy is not income, the administrator of the deceased guardian would be entitled to recover *at law*, that would not be conclusive of this case, where it is shown, as we think it has been, that *in equity* he could not recover.

The foregoing remarks dispose of the cases of *Seabrook* ads. *Williams*, 3 *McCord*, 371, and *Miller* v. *Alexander*, 1 *Hill Ch.*, 26, also relied on in support of the decision below. For those cases, as shown in *Rhame* v. *Lewis*, *supra*, while recognizing the right of the administrator of the person holding the *legal* title to recover *at law*, at the same time recognize the right of the person entitled to the beneficial interest to recover in equity.

In the case of *National Bank* v. *Insurance Company* (104 *U. S.*, 54), one Dillon, who was the general agent of the insurance company, entrusted with the collection of premiums on policies issued in the territory for which he was appointed agent, deposited the money so collected in the bank to his credit as agent, and made remittances to said company by his checks drawn against said account. There being a large balance to the credit of the account opened in the name of Dillon, agent, and Dillon having become indebted to the bank on his own individual account, the bank undertook to liquidate this indebtedness by charging the same to the deposit account standing in the name of Dillon, agent. The insurance company filed a bill in equity against the bank, to recover the balance which it alleged remained to the credit of Dillon, agent, repudiating the right of the bank to charge up the individual indebtedness of Dillon to such account, and claiming the deposit as a fund received by Dillon in his fiduciary character as their agent, which it had the right to follow and reclaim as against the bank. The court sustained the claim of the insurance company, holding, in substance, that while the relation between the bank and its depositor is that of debtor and creditor, yet if the money deposited is held in a fiduciary character by the depositor, it does not change its character by being placed to

his credit in his bank account. Hence, where, as in this case, the bank has notice of the trust character of the deposit, it cannot enforce the lien which ordinarily attaches to a deposit.

It seems to us that this case, so far from lending any support to the decision below, tends to favor the view which we have adopted. It is true that it is not directly in point either one way or the other, for there was no question raised or discussed as to whether the funds could have been paid out by the bank upon the check of the executor of the person who actually made the deposit of the trust funds, or whether the person entitled to the beneficial ownership was entitled to draw the money. The real question in the case was, whether the bank, having notice of the trust character of the money deposited, could, by its lien on such deposit, enforce the payment of an individual debt of the trustee, who actually made the deposit. And the court not only decided that the bank could not thus pay itself out of the trust fund, but also rendered a decree for the payment of the money to the insurance company, which, though not the *legal*, was the *equitable* owner of the money, thereby recognizing the superiority of the equitable claim of the insurance company over the legal title of Dillon, the person who made the deposit. The plain inference from this is, that if Dillon had died and his executor had attempted to claim the money from the bank, his claim would not have been recognized in the face of the superior equitable claim of the insurance company, for the bank certainly could not be held liable to both.

Without undertaking to consider in detail the various cases cited in the opinion of Mr. Justice Matthews, in the case of *National Bank* v. *Insurance Company*, it seems to us that those cases clearly show that where a trustee deposits trust funds in a bank to his credit as trustee, the same can only be drawn out upon checks signed by the trustee in proper form; and that while the bank may safely assume, without notice to the contrary, that when the checks are so drawn, the trustee is in the course of lawfully performing his duty, and may be honored accordingly, yet when the bank has notice that such is not the case—as, for instance, when it appears that the check is to be used in payment of the individual indebtedness of the trustee—the bank cannot

honor such a check without thereby participating in the breach of trust involved in the application of trust funds to the individual use of the trustee. The bank is bound to recognize the equitable rights of the *cestui que trust*, and cannot safely contribute to the diversion of the trust fund to an improper or unauthorized use.

From this it follows, that when trust funds are deposited in bank to the credit of the trustee as such, and the trustee dies, the bank cannot be compelled to pay such funds to any but the real owners of it, or one duly authorized to represent them; and as we have shown, the executor of the trustee is not such a representative. For, as is said by Lord Justice Knight Bruce in the case of *Pennell* v. *Deffell*, 4 *DeG. M. & G.*, at page 383, as quoted by Mr. Justice Matthews in National Bank *v.* Insurance Company, *supra:* "When a trustee pays trust money into a bank to his credit, the account being a simple account with himself, not marked or distinguished in any other manner, the debt thus constituted from the bank to him is one which, as long as it remains due, belongs specifically to the trust, as much and as effectually as the money so paid would have done had it specifically been placed by the trustee in a particular repository and so remained; that is to say, if the specific debt shall be claimed on behalf of the *cestuis que trustent*, it must be deemed specifically theirs as between the trustee and his executors, and the general creditors after his death on one hand and the trust on the other."

In the case of *Bailey* v. *Finch* (7 *Law Rep.*, Q. B., 34), Finch had three deposit accounts with a banking house—two in his individual name, both of which were overdrawn, and one in his name as executor of Mrs. Alexander, upon which there was a balance in his favor. In an action to recover the amount overdrawn on his individual accounts, he sought to set off the balance due on his account as executor, and the court allowed him to do so. The case, as thus stated, would seem to be clearly in conflict with what is said in the case last considered, as well as in the authorities there cited. But there was a circumstance appearing in the case which relieves it from such conflict, and that was the fact that Finch, as residuary legatee of Mrs. Alexander, was not only legally, but equitably entitled to the whole balance appearing to be due to him as executor, and hence there being no one else

entitled to any interest, either legal or equitable, in such balance, he could properly apply it, or have it applied, by way of set-off to the payment of his individual debt. Here, again, it will be observed that this case does not decide the precise point presented by this appeal, though the Justices in delivering their opinions do recognize the right of the persons really entitled to the beneficial interest in the fund to interpose, and assert their equity as against the claim of the legal owner.

Indeed, this equity on the part of the persons beneficially interested in the fund to interpose and prevent the payment of it to one claiming merely as *legal* owner, seems to be conceded; but it is urged that, in the absence of any such interposition, the bank having no equity of its own, cannot resist the claim of the *legal* owner. This concession, it seems to us, is fatal to the plaintiff's claim in this case; for it involves an admission of the superior right of the *equitable* to that of the merely *legal* owner, and the fact that the equitable owners have not interposed in this case, cannot affect the question, inasmuch as they are minors and their rights cannot be forfeited by *laches* or non-claim, as it is one of the duties of the court to protect the rights of infants.

It appears to us, therefore, that in no view of the case is the plaintiff, as executor of M. W. Gary, entitled to the money deposited in bank to the credit of M. W. Gary, guardian; that such money, set apart from his own by the testator and designated specifically as the money of his wards, constitutes no part of the assets of the testator's estate, and cannot lawfully be paid to his executor. Suppose the estate of M. W. Gary had proved to be insolvent; then, if this money were paid over to the executor, it must, of course, go into the general assets of the testator's estate, though specially designated by the testator as the money of his wards, and would be applied *pro rata* to the claims of creditors generally, to the loss and prejudice of the wards, or the sureties on the guardianship bond, whose rights are entitled to be respected.

Under this view of the case, the other question as to interest cannot arise, and need not, therefore, be considered.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the complaint be dismissed.

MR. JUSTICE McGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON. I cannot concur in the opinion of the majority, for reasons hereafter to be given in a dissenting opinion.

Judgment reversed.