In the Matter of the Accounting of NEHEMIAH HAYDEN, as Executor of HENRY ALLEN, Deceased.

SARAH H. HAYDEN, Individually and as Executrix of NEHEMIAH HAYDEN, Deceased, et al., Appellants; PHEBE A. DONCOURT, as Substituted Trustee, Respondent.

Executors and administrators — accounting by executors of a deceased executor trustee — misappropriation of funds of estate by attorney employed by such executor trustee, whose employment was continued by his executors and by the successor of such executor trustee — when executors of such executor trustee not liable for negligence in failing to detect and recover such misappropriation.

1. The law permits, and in some cases compels, an executor of an executor or other deceased representative to account, but it does not require him to administer the first decedent's estate, for that is prohibited by section 121 of the Decedent's Estate Law. It also empowers the surrogate to compel the representative of the deceased executor, etc., to deliver over property *in his possession or control* belonging to the estate of the first decedent.

2. A testator by his will directed his executor to set apart a fund for the benefit of the beneficiary named therein during her life, and after her death to pay the corpus to her daughter, the respondent. The executor took the fund to an attorney and authorized him to invest it upon bond and mortgage, and the attorney advised the executor that he had so invested it. The executor died a few days after, having taken no further action in the matter. His executors undertook the settlement of the estate so held by him and rendered an account for him as executor and trustee of the last will and testament of his testator. For the purpose of making that account the executors of the deceased executor employed the same attorney to whom the fund had been delivered by such former executor, and when they signed the account they made no inquiry as to where or how the $8,000 was invested. In this account the only designation of the trust fund was " Invested on bond and mortgage eight thousand ($8,000) dollars." The surrogate found that this statement referred to the trust fund in question, but refused to find that it had in fact been invested upon bonds and mortgages. The

beneficiary was then made substituted trustee under the will of her testator. She took no steps to ascertain the facts as to the investment of the fund or to get actual possession of it or of any securities in which the same may have been invested. The attorney who received the money and claimed to have made the loan absconded. *Held,* that the executors of the deceased executor are not estopped from denying that they had possession or control of the trust fund, because they filed a judicial account which contained the statement: " Invested on bond and mortgage Eight thousand ($8,000) Dollars." And *held,* also, that they were not guilty of negligence and not liable to the beneficiary either as individuals or as executors.

*Matter of Hayden,* 146 App. Div. 891, reversed.

(Argued January 15, 1912; decided February 2, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered July 27, 1911, which affirmed a decree of the Queens County Surrogate's Court granting a petition of the substituted trustee of trusts created by the will of Henry Allen, deceased, to compel the executors of the former trustee, deceased, to turn over certain securities.

The facts, so far as material, are stated in the opinion.

*Eugene Frayer* and *Harry W. Alden* for Sarah H. Hayden, appellant. The loss of the trust fund was not caused by any act of Mr. Hayden's executors, nor any omission on their part to do any act which they had any legal right or were under any legal obligation to do. (*Bremer* v. *Manhattan Ry. Co.,* 191 N. Y. 333; *Elterman* v. *Hyman,* 192 N. Y. 113.) Mr. Hayden's executors after his death had no legal right or power, and consequently were under no legal duty, to administer the trust under the will of Henry Allen, or to take any charge or control of the trust estate, or to make any change in the form or character of the investment. (*Matter of Allen,* 2 Dem. 203; *Leggett* v. *Stevens,* 77 App. Div. 612; *Brater* v. *Hopper,* 77 Hun, 244; *Wildey* v. *Robinson,* 85 Hun, 362; *Matter of Moehring,* 154 N. Y. 423; *Perkins* v. *Stimmel,* 114 N. Y. 359; *Matter of Fith-*

*ian,* 44 Hun, 457.) Neither the trust fund nor the securities in which it was invested ever came into possession of Mr. Hayden's executors, and it was error to require Mrs. Hayden, individually, or Mr. Skidmore's executors out of his individual estate to deliver the securities in which the trust fund was invested, or to pay over the amount of the trust fund and interest thereon. (*Maze* v. *Brown,* 2 Dem. 217; *Scofield* v. *Adriance,* 2 Dem. 486; *Matter of Fithian,* 44 Hun, 457; *Matter of Walton,* 112 App. Div. 176.) The provisions of the order appealed from, requiring the delivery of the securities or payment of the trust fund and interest thereon out of the estate of Mr. Hayden, was not justified by the facts shown. (*Seaward* v. *Davis,* 133 App. Div. 191; 198 N. Y. 415.) The surrogate's decree cannot be justified, either on the theory of negligence, or on any proper construction of the items in the account, describing the fund accounted for as invested in bond and mortgage. (Code Civ. Pro. § 2606; *Matter of Fithian,* 44 Hun, 457; *Naze* v. *Brown,* 2 Dem. 217; *Schofield* v. *Adriance,* 2 Dem. 486; *Perkins* v. *Stimmel,* 114 N. Y. 359; *Matter of Walton,* 112 App. Div. 176; Jessup's Sur. Pr. [3d ed.] 617.)

*Frank G. Wild* for George W. Eastman, as executor, appellant. The trust estate or the bonds and mortgages in which it was invested were never in the possession of the executors of the deceased trustee, and there is no finding that they ever were. (*Matter of Fithian,* 44 Hun, 457; *Matter of Clark,* 119 N. Y. 427; *Perkins* v. *Stimmel,* 114 N. Y. 370; *Matter of Irvin,* 68 App. Div. 162; *Matter of Walton,* 112 App. Div. 176; *Matter of Hicks,* 170 N. Y. 195; *R. L. Co.* v. *S. & P. P. Co.,* 135 N. Y. 212.) Instead of the estate being in the executors' hands, it was in the hands of Lawton originally as agent for Hayden, and later as agent for respondent, and the findings made at the executors' request show this affirma-

tively. (*Union Mills* v. *Harder*, 191 N. Y. 483; *Bremer* v. *M. R. Co.*, 191 N. Y. 333.) The final decree in this proceeding cannot be sustained upon any theory of negligence on the part of the executors. (*Whalen* v. *Stuart*, 194 N. Y. 504; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 190 N. Y. 94; Code Civ. Pro. § 2606; *Matter of Collyer*, 113 App. Div. 470; *Smyth* v. *B. U. E. R. R. Co.*, 193 N. Y. 335; *Everett* v. *Everett*, 180 N. Y. 452.)

*Edward L. Frost* and *William Clarke Roe* for respondent. The petitioner herein, Mrs. Doncourt, was under no obligation to the executors of the estate of Nehemiah Hayden, the appellants, to demand from Mr. Lawton the papers representing the trust estate. (*Galway* v. *M. E. R. Co.*, 128 N. Y. 154; *Hollins* v. *Hubbard*, 165 N. Y. 543; *Collier* v. *Miller*, 137 N. Y. 339; 2 Pom. Eq. Juris. § 273; *Viele* v. *Judson*, 82 N. Y. 40; *Long* v. *Path*, 16 Misc. Rep. 85.) Appellants, themselves, are estopped from denying their liability to produce either the securities or the amount represented thereby. (2 Pom. Eq. Juris. § 809.)

WERNER, J. The appellants in this proceeding are the executors of a deceased executor, and the respondent is the ultimate beneficiary or remainderman of a trust fund which was despoiled by an unfaithful attorney to whom it had been intrusted for investment. The question is — who shall bear the loss? Thus far the courts have decided that it must be borne by the appellants, and the theory upon which their liability has been predicated is that they were negligent in not taking personal possession of the fund or the securities in which it may have been invested. The correctness of this conclusion depends wholly upon the facts which constitute the history of the case, and these we can best state in regular sequence by briefly paraphrasing the substance of the findings of the surrogate.

Henry W. Allen died in October, 1883, leaving a will wherein he directed his executor, Nehemiah Hayden, to set apart a fund sufficient to produce one dollar per day for the benefit of Mary Taylor during her life, and after her death to pay the corpus of the fund to her daughter, Phebe Amelia Doncourt, who is the respondent on this appeal. Nehemiah Hayden qualified as such executor and entered upon the performance of the trust. He invested the sum of $8,000, and until his death in February 1901 he paid to Mary Taylor $365 per year. On or about January 14th, 1901, he took this fund of $8,000 to an attorney named Lawton, and authorized him to invest it upon bond and mortgage, and pending such investment to deposit the same with the Real Estate Trust Company of New York. Lawton deposited the money, subject to his own order, and on January 21st, 1901, advised Nehemiah Hayden by letter that he had secured two loans, which he approved and considered good; one for $5,500 and the other for $2,500, upon property in the 24th ward in the city of New York, and asking Hayden if he approved of the loans. Nehemiah Hayden died on the 1st day of February, 1901, without having answered Lawton's letter. Nehemiah Hayden left a will in which he appointed as his executors his wife, Sarah H. Hayden, and one William A. Skidmore. These executors undertook the settlement of the estate and rendered an account for Hayden as executor and trustee of the last will and testament of Henry Allen, deceased. In this account the only designation of the trust fund for the benefit of Mary Taylor was, " Invested on bond and mortgage Eight thousand ($8,000) dollars." The surrogate found that this statement referred to the Taylor trust fund, but refused to find that it had in fact been invested upon bonds and mortgages. For the purpose of making that account, Mrs. Hayden and Mr. Skidmore employed Lawton, the same attorney to whom the fund had been delivered by Nehemiah Hayden; and when they signed the

1912.] Opinion, per WERNER, J. [204 N. Y.]

account they took Lawton's word as to its truth and correctness, without making any inquiry as to where or how the $8,000 was invested.

When Mrs. Hayden and Mr. Skidmore had rendered their account to the surrogate, it became evident that some one ought to be appointed as substituted trustee of the Taylor trust fund, and Skidmore suggested that Mrs. Doncourt, the ultimate beneficiary of the fund, would be the proper person. She consented to act. Lawton, the attorney, prepared the necessary papers. Mrs. Doncourt was appointed. In order to qualify she made application to a surety company for a bond in which she stated, among other things, that the trust estate consisted of bond and mortgage for $5,500 on property on the east side of Park avenue, 300 feet south of 182d street, New York city; and bond and mortgage for $2,500 on property on the south side of 183d street, 150 feet east of Park avenue, New York city. In this application Mrs. Doncourt also certified that the foregoing statements as to the character and description of the trust estate were made upon her own knowledge and were true. As matter of fact these statements were not true, or at least Mrs. Doncourt did not know them to be true, for she had no knowledge upon the subject except the representation of Lawton, the attorney; and the surrogate has refused to find that the fund was invested upon the bonds and mortgages described by Mrs. Doncourt's statement.

After the appointment of Mrs. Doncourt as substituted trustee under the will of Henry Allen, deceased, the said Skidmore, one of the executors of Hayden, the deceased trustee, went to Lawton, the attorney, and asked for the bonds and mortgages for the purpose of delivering the same to Mrs. Doncourt. Lawton advised that they be left in his fireproof vault for safekeeping. The next morning Skidmore started to go to Mrs. Doncourt's to inform her of his interview with Lawton. On

the way Skidmore met Mr. Doncourt, whom he informed of what had taken place in Lawton's office; and Doncourt, who was authorized to act for his wife, stated that what Skidmore had done was entirely satisfactory and that he, Skidmore, need not trouble himself further in the matter.

Lawton, the attorney, offered to collect for Mrs. Doncourt the income from the trust fund and from it to pay over to Mary Taylor the annuity to which she was entitled, and Mrs. Doncourt permitted him to do it in order to save herself trouble and annoyance. He never rendered any account to her, and she never asked him to make one. She received from Mrs. Hayden and Mr. Skidmore a pass book, issued by the Farmers' Loan and Trust Co. to Nehemiah Hayden, as trustee under the will of Henry Allen, deceased, showing a balance due to the Taylor trust fund of $830.99. This was turned over to Lawton, with two checks signed by Mrs. Doncourt payable to Lawton's order, and Lawton drew the money. From that time, in March, 1902, Lawton was always dilatory in his payments. Mrs. Doncourt had occasion to frequently "stir him up," as she expressed it, but took no steps to get actual possession of the fund or of any securities in which the same may have been invested. Thus matters continued until December, 1906, when Lawton absconded without paying over to Mrs. Doncourt any part of the trust fund or turning over to her any securities.

Upon these facts and the further finding that Mrs. Doncourt relied upon the statement contained in the account of Mrs. Hayden and Mr. Skidmore to the effect that the trust fund had been invested in bonds and mortgages and had, therefore, made no effort to take physical possession of the fund or securities, the learned surrogate came to the conclusion that Mrs. Hayden and Mr. Skidmore, the executors of the deceased trustee, had been negligent in not examining the papers of the trust estate and in not ascertaining that it had been properly invested,

and that Mrs. Doncourt, the substituted trustee, was free from negligence.

The principal question in the case, therefore, is whether the facts found by the surrogate warrant the conclusion of negligence against the appellants, Sarah H. Hayden and William A. Skidmore, as executors under the will of Nehemiah Hayden, the deceased trustee. If they were negligent the surrogate was right in holding that Sarah H. Hayden is liable individually and as executrix, and that Edeliza Skidmore and George W. Eastman, as executors of William A. Skidmore, who is now dead, are liable in their official capacity; and, of course, the necessary corollary to this conclusion is that if neither of the executors of Nehemiah Hayden were negligent in respect of this trust fund, then they are not liable either as individuals or as executors.

In determining this question the first and most direct method of investigation is to ascertain how and when the fund was lost. It was misappropriated by Lawton. He absconded in 1906 or four years after the respondent Doncourt had been appointed as, substituted trustee. Just when the fund was misappropriated does not appear, for there is no express finding that it was ever invested at all. For aught that we know Lawton may have paid the income to Mrs. Taylor out of his own moneys. During the four years which elapsed between the appointment of Mrs. Doncourt as substituted trustee and the flight of Lawton the latter was always dilatory in his payments, and yet the former never took the pains to ascertain whether the trust fund had been invested or whether Lawton held any securities which belonged to the trust. Mrs. Doncourt never asked Lawton to account for the trust fund or any securities representing the same, and actually turned over to him the amount on deposit to the credit of the trust in the Farmers' Loan and Trust Co., and permitted him to deposit it to his own order. All this happened after Skidmore, one of the executors of

22

the deceased executor Hayden, had sought to deliver to Mrs. Doncourt the bonds and mortgages in which the trust fund was supposed to have been invested. The reason why the delivery was not made or attempted was that Mr. Doncourt, acting for his wife, directed that the matter be left in the hands of Lawton. These circumstances, so far from imputing negligence to the appellants, Mrs. Hayden and Skidmore, would seem quite conclusively to establish negligence on the part of the respondent Mrs. Doncourt. Assuming, however, that Mrs. Doncourt was not negligent, it is quite apparent that she ratified the act of Mrs. Hayden and Skidmore in leaving the trust fund, or the securities representing it, in the hands of Lawton. Instead of insisting upon a delivery to her, Mrs. Doncourt directed that they should he left with the attorney who, from that time forth, acted exclusively for her.

When we turn from the events which followed Mrs. Doncourt's appointment as substituted trustee and consider the conduct of Mrs. Hayden and Mr. Skidmore in connection with their executorial status, there is still less justification for the finding that they were negligent. They were executors of an executor. As such their duties were not greater than their power and authority. The law as it stood in 1901 and 1902, when they were acting as such executors, was afterwards repealed, but re-enacted in section 121 of the Decedent Estate Law (L. 1909, chap. 240, sec. 16). It then provided as it now provides (Cons. Laws, ch. 13, sec. 121), that " an executor of an executor shall have no authority to commence or maintain any action or proceeding relating to the estate, effects or rights of the testator of the first executor, or to take any charge or control thereof, as such executor." Under this statute an executor or administrator of a deceased executor or administrator is merely the temporary custodian of such part of the unadministered estate of the first testator as may come into his hands. As he

has no power to compel delivery to himself, he is under no
duty to assume possession, and unless he volunteers to do
so he cannot be made liable for the default or misappro-
priation of others.   This statute was not affected by the
repeal in 1880 of another section of the Revised Statutes
(Part 2, ch. 6, title 2, art. 1, sec. 17), relating to the
rights and duties of executors of executors.   The statute
repealed in 1880 provided that "No executor of an execu-
tor, shall, as such, be authorized to administer on the
estate of the first testator; but on the death of the sole or
surviving executor of any last will, letters of administra-
tion with the will annexed   *   *   *   shall be issued" in
the manner prescribed by other sections.   In *Matter of
Moehring* (154 N. Y. 423, 429, 430) this court indicated
its views respecting the effect of the repeal of the last-
quoted section of the Revised Statutes.   There Judge
MARTIN, speaking for the court, said: "Although this
section was repealed by chapter 245 of the Laws of 1880,
still the material part of its provisions was carried into and
made a part of section 2643 of the Code of Civil Procedure.
That section in effect provides that if, at any time by reason
of death, there is no executor or administrator with the
will annexed, qualified to act, the surrogate *must*, upon the
application of a creditor of the deceased or a person inter-
ested in the estate, issue letters of administration with
the will annexed.   (See, also section, 2693.)   Upon the
death of an executor, it becomes the imperative duty of
the surrogate, on the application of a person interested
in the estate, to appoint a representative to administer the
assets of the testator left unadministered.   We think it
is quite clear that the legislature intended to prohibit the
executor of an executor from administering the assets of
an estate which came into his hands, and that there is
nothing in section 2606 which indicates a contrary pur-
pose."   When the opinion in that case is carefully read in
connection with the whole of section 2606 of the Code of
Civil Procedure, it is clear that as the law now stands an

executor of an executor may be called upon to account for his deceased executor, but he cannot be compelled to administer. Under the Revised Statutes he could not be required to do either. Now he must do the former, but he cannot do the latter. When this distinction is kept in view the meaning of the last sentence of section 2606 is at once apparent. "The Surrogate's Court has also jurisdiction to compel the executor or administrator, or successor of any decedent, at any time to deliver over any of the trust property *which has come to his possession or is under his control.*" Recapitulated in a sentence, the law now permits, and in some cases compels, an executor of an executor or other deceased representative to account, but it does not require him to administer the first decedent's estate, for that is prohibited by section 121 of the Decedent Estate Law; it also empowers the surrogate to compel the representative of the deceased executor, etc., to deliver over property *in his possession or control* belonging to the estate of the first decedent.

We think that this is not a case which falls within section 2606 under which this proceeding was instituted. The appellants never had either possession or control of the trust fund or any securities in which it may have been invested. The fund was originally given over to Lawton, the attorney, by Hayden, the executor of Allen. There is nothing in the record to show that it was not in Lawton's possession when the respondent Mrs. Doncourt was appointed substituted trustee. By the express direction of the latter it was left with Lawton, and for aught we know was in his hands up to the very day of his flight. In these circumstances the provisions of the statute and the specific findings of the surrogate protect the appellants from liability.

The respondent urges, however, that the appellants are estopped from denying that they had possession or control of the trust fund, because they filed a judicial account which contained the statement: "Invested on bond and

mortgage Eight thousand ($8,000) Dollars." There are several answers to this contention. 1. The surrogate's decision was not placed upon that ground. He held the appellants liable solely on account of negligence. 2. As the surrogate refused to find that the trust fund was invested on bond and mortgage, we do not see how the mere recital in the account of the appellants can operate to estop them from taking a position which, to say the least, is consistent with that finding. 3. The recital in the account was at most a mere admission which was open to explanation.

The order of the Appellate Division and the decree of the Surrogate's Court should be reversed and the proceeding dismissed, with one bill of costs to the appellants in all the courts.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, HISCOCK and COLLIN, JJ., concur.

Order reversed, etc.