REAR, Appellant, vs. OLSON, Administrator, and others, Respondents.
REAR, Appellant, vs. OLSON, Respondent.

*September 10—November 5, 1935.*

324

For the appellant there was a brief by *Elmer & Peterson* of Monroe, and oral argument by *Marshall L. Peterson*.

For the respondent Olson there was a brief by *Blum & Blum* of Monroe, and *Jeffris, Mouat, Oestreich, Wood & Cunningham* of Janesville, and oral argument by *Otto A. Oestreich*.

FAIRCHILD, J. By proper proceedings, a judgment entered by default against respondent was vacated, and the ruling of the trial court with respect thereto was a correct one.

The conceded facts do not establish any claim in appellant's favor against any of the defendants other than respondent Olson. It appears that this respondent, several times, although in different capacities, performed some acts with relation to the funds of appellant. As a bank official he issued certificates of deposit, acknowledging the receipt by his bank of the funds or some portion thereof. As administrator of a deceased guardian's estate, he came into possession of those certificates of deposit and also of a note upon which there was an unpaid balance due and owing to appellant and his brother Orville, both of whom were at the time minors. As such administrator, it was respondent's duty to hold these evidences of indebtedness and make proper account thereof. He was not, by virtue of his appointment as administrator of the Nybroten estate, entitled to act as the guardian of Orville and Julian Rear who were minors. Sec. 287.07, Stats.; *Gary v. National Bank,* 26 S. C. 538, 2 S. E. 568; Schouler, Wills, Executors and Administrators (5th ed.), § 1245; *Matter of Hayden's Account,* 204 N. Y. 330, 97 N. E. 718. The evidence sustains the findings made by the trial court that as such administrator respondent properly acquitted himself. But his connection with the funds did not end there, and losses subsequently occurred. He was appointed, on or about February, 1927, guardian of Orville Rear, the older of the two minors. After this appointment, the evidence shows that respondent dealt with the interests of Julian, the appellant here, as well as with those of Orville, for whom he was guardian. Although he intended to serve only as guardian for Orville, he collected the note and cashed the certificates of deposit belonging to both the minors for the purpose of more readily meeting the requirements of the

trust arising under his appointment as guardian of Orville. He reissued certificates of deposit and placed other money belonging to both minors in a checking account. Later he paid over to Orville one-half of the money, and placed the balance in the bank. The bank's indebtedness on this account was evidenced by two certificates of deposit and a checking account bearing the style "Rear Minors" account.

The steps taken to collect and place in Orville's hands a proper share of the money represented by the note, certificates of deposit, and checking account, are relied upon by appellant to establish the fact that respondent was an intermeddler so far as appellant's funds are concerned, and that by reason thereof, the bank having failed to pay in full, respondent is liable as one having converted funds to his own use. The liquidation proceedings in connection with the bank have resulted in a payment of $1,462.84 on the claim, which sum appellant has accepted since becoming of age. . The appellant is entitled, under the evidence, to a recovery of the balance.

Respondent was duly appointed guardian of Orville. This appointment did not include appellant, and did not confer upon respondent any right or authority to act for or bind appellant. The reasons which must have suggested the necessity of having a guardian appointed to protect the interests of one, would seem to furnish a pointed suggestion at least, that guardianship of the other ought to be arranged for. Respondent, as guardian of Orville, assumed to act for Julian too, in handling evidences of indebtedness of which Orville and Julian were co-owners and tenants in common. He collected money, placed it in the Union State Bank, and paid Orville his share. A question now arises as to the position respondent has placed himself in with relation to appellant and his property. A guardian *de son tort,* sometimes described as a *quasi* guardian or guardian by estoppel, is one who assumes to act as a guardian without valid authority.

Tiffany, Persons & Domestic Relations, § 152; Spencer, Law of Domestic Relation, § 736. Respondent assumed to act for both minors with respect to the evidences of indebtedness. What he did for one, he did for the other, and except for paying Orville his proper share of the estate, he did no more for one than he did for the other. He was the duly appointed guardian of one, and was acting for the other without valid authority. The facts and circumstances surrounding these transactions, having resulted in respondent's assuming control of the funds belonging to a minor, it becomes necessary to determine his duties and obligations with respect thereto: Having collected the note, cashed and rearranged the certificates of deposit and the checking account in the Union State Bank, the respondent was bound to stand by the estate, which for the time being he had appropriated and taken control of. He could not abandon the actual interest of the minor for whom he had assumed to act without doing so at his peril.

It is unnecessary to treat further the character of the position resulting from respondent's actions with relation to the fund. Whatever it was, it was not a formal trust initiated by a grant or declaration of trust. It had no definite period of contemplated duration. It would seem that respondent's duty was either to accept the full responsibility thereof, or terminate his relation to the fund by seeking out the proper person to whom he could make delivery. He must proceed properly to unload the burden he has taken upon himself, or continue in the character he has assumed with the knowledge that he may be called to account as a tort-feasor, unless intervening circumstances create conditions which equity will recognize as establishing a trust relation, or the minor, upon becoming of age, elects to treat the matter as a trust. Spencer, Law of Domestic Relations, § 736; *Sherman v. Ballou,* 8 Cow. (N. Y.) 304. *Linton v. Walker,* 8 Fla. 144, 71

Am. Dec. 105, recognized the doctrine that the ward has the choice between an action for tort and an accounting against one situated as is the respondent. That court referred to *Sherman v. Ballou, supra,* as a "very conclusive authority," and quoted from the opinion in that case as follows :

"If a man who has no title to be guardian, enters as guardian into the lands of an infant, it is at the election of the infant to make him a disseisor, . . . or else to dissemble the wrong and call him to an account as a guardian."

Had respondent refused to proceed with the converting of the evidences of indebtedness into cash until Julian's interests were properly represented, the troubles now encountered could not have arisen. Had he properly or reasonably proceeded in the matter of securing a guardian for Julian, or had he taken the money into court and left it there, the result would of necessity be different. In 1927 or 1928, appellant could not take the money and no one stood in his stead who could. The respondent, having assumed to act, certain responsibilities immediately attached. He could not throw the money away or hand it to a chance passer-by, and thus escape a liability. Here no steps were taken by respondent to end the relation which the circumstances of the transactions had created, or to relieve himself in a lawful way from the responsibilities entailed by his acts.

While the default arises from a misconception of his duties, and from his conclusions that his obligations were fully discharged by leaving the funds as completely as possible in the state he found them, this fact is of no legal materiality. He had a duty so long as he was thus legally charged with the possession of the estate. He made no effort whatever to meet this duty, and his liability is based on this default.

He placed the money in a bank of which he was an official, and the great weight and clear preponderance of the evidence shows that he then entertained the intention of leaving the

money there. He deposited the funds. He testified that he told Julian the money "was there at the bank and he could get it by having a guardian appointed for himself, or if he was of sufficient age to make his own determinations, that he could settle that matter with the guardian. I had nothing to do with it. . . . I believe I offered this suggestion to Julian— 'you can have your guardian appointed, but if the judge in Green county takes the same attitude as Judge SIMPSON did, he will not allow your guardian to spend money for an automobile.'" This was in response to an inquiry· concerning the purchase of an automobile. Funds of both minors had been in the bank for a number of years under the Nybroten guardianship. A form of certificate of deposit was used which made them payable on demand, but with loss of interest if not left a specified time. Whether it was respondent's expectation that Julian would not ask for the appointment of a guardian, and that there would be no interference with the leaving of the money in the bank until Julian became of age some four years later, is of minor consequence, as is also the fact that respondent resigned from his position in the bank a few months before it closed. He was, in law, in possession of the funds. He placed them in the bank for the minor who could not draw them until the time of his becoming of age. In view of appellant's election to treat respondent as a wrongdoer, and his claim being in tort, the question of exercising a proper care for the preservation of the estate does not arise in this case as a matter of law. The question is the amount of damages resulting to appellant. *Merrill v. Comstock,* 154 Wis. 434, 143 N. W. 313. The respondent is liable as one converting funds to his own use. As a matter of fact, respondent's declared purpose was to exercise no care or control over the funds after Orville's share had been legally disposed of. The money had been in respondent's possession by reason of his own acts, at least from the time he turned over to Orville his share on July 18, 1928. There is some

evidence indicating an earlier date as the time when respondent exercised control over appellant's funds, but the circumstances of this case and the state of the evidence fully warrant a finding that such control of the entire estate commenced July 18, 1928. Neither respondent's reason for continuing his control over the money and leaving it in the bank, nor his misunderstanding of his legal duty with respect to the funds, can excuse him from the responsibility which the law places upon him. Even if there were some method of finding that he attempted to exercise a proper degree of care when he really abandoned the interest he was bound to protect, it must be held that he is now required to make good the loss which appellant has sustained.

The acts of respondent brought upon him a liability to the appellant for the funds with which he intermeddled. The appellant being within his strict legal rights in demanding judgment for the amount of loss sustained by the closing of the bank, is entitled to the relief sought. Judgment should be for the amount of the funds July 18, 1928, less payments made, with interest from July 18, 1928.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.

NELSON, J., dissents.