**PEMBERTON et al. v. LEATHERWOOD et al.**

No. 2700.

Court of Civil Appeals of Texas. Eastland.

Feb. 18, 1949.

Rehearing Denied March 18, 1949.

Judgment reformed, and as reformed affirmed.

G. H. Williamson, of Stephenville, and Aubrey G. Alexander, of Fort Worth, for appellants.

C. O. McMillan and Joseph A. Chandler, both of Stephenville, for appellees.

LONG, Justice.

On May 11, 1940, at the instance of H. L. Pemberton, Marie Allen Drake, J. R. Pemberton, Carl Pemberton and Cordie Bunnell, C. E. Leatherwood was appointed receiver of the estate of Henry O. Pem-

berton, who was alleged to be of unsound mind. Thereafter, Henry O. Pemberton was adjudged insane and C. E. Leatherwood was appointed guardian of his estate and Marie Allen Drake guardian of his person. Henry O. Pemberton was a bachelor and his nearest of kin were his nephews and nieces named above, on whose application the appointments of the guardians were made. Marie Allen Drake, guardian of the person, died in September, 1942. After her death, Leatherwood continued as guardian of the estate and also acted as guardian of the person of the ward without qualifying as such. Henry O. Pemberton died on August 31, 1945, and C. E. Leatherwood was appointed temporary administrator of his estate on September 3, 1945, which appointment was thereafter made permanent.

Thereafter, the heirs of Henry O. Pemberton (his nieces and nephews), hereinafter referred to as appellants, filed a bill of review in the county court of Erath County against C. E. Leatherwood individually and as guardian of the estate of Henry O. Pemberton, non compos mentis, and as temporary and permanent administrator of the estate of Henry O. Pemberton, deceased, and against National Surety Corporation as surety on said guardian's bond, and on his bond as permanent administrator, to review the final account and the order of the probate court approving the same and certain other orders and proceedings in the guardianship of the estate of Henry O. Pemberton, non compos mentis. From the judgment entered on said bill of review in the county court, Leatherwood appealed to the district court of Erath County. Upon a trial in the district court, de novo, without a jury, that court rendered a judgment sustaining in part and denying in part the objections to said guardianship proceedings raised by appellants. From such judgment the heirs have appealed.

Appellants predicate their appeal upon twenty-eight points. By their first and second points, appellants contend that the court erred in refusing to charge the guardian with the full sum of $10,902.53 cash on hand and not inventoried, belonging to the ward and in crediting said sum with different items of expenses aggregating $530.58 paid out by the guardian but never reported to or acted upon by the probate or receivership court.

Leatherwood filed his final account as receiver on July 1, 1940, which account was approved by the court on July 7, 1940, such final account showing that he had on hand at that time $10,902.53 in cash. On June 19, 1940, Leatherwood was appointed guardian of the estate. In the inventory and appraisement filed by the guardian, he failed to list as part of the assets of the estate the sum of $10,902.53 on hand at that time. The guardian, however, thereafter transferred said sum to the guardianship account, less the sum of $530.58 paid by him as expenses in the receivership matter. It is clear that the sum of $530.58 was never inventoried by the guardian as part of the estate. It is the well settled law of this State that a bill of review will not lie to review the failure of the guardian to include property in the inventory. The guardianship statutes afford a proper method whereby the guardian can be compelled to amend an erroneous inventory and include therein property that has been omitted and a new appraisement ordered. Arts. 4159 to 4160, Revised Civil Statutes.

In the event a guardian refuses to comply with an order to file an amended inventory, secured in the manner provided by the Statutes, the proper procedure is by a direct suit against the guardian and his sureties for the amount received and not accounted for and not by bill of review as in this case. Nicholson v. Nicholson, 59 Tex.Civ.App. 357, 125 S.W. 965, writ denied; Yates v. Watson et al., Tex. Com.App., 221 S.W. 966; De Grummond et al. v. Smith, Tex.Civ.App., 168 S.W.2d 899. The court could not, in this proceeding, determine whether the expenditure from the receivership funds were or were not proper.

By point three, appellants contend the court erred in giving the guardian credit for items aggregating $333.39 paid out by him after the death of the ward, and after he had been appointed temporary

administrator of his former ward's estate. The record shows that the expenses complained of were incurred before the death of Henry O. Pemberton and were paid on September 4, 1945, before the guardian filed his final account and after Leatherwood was appointed temporary administrator of the estate. The record further discloses that this was expense incurred for hospital, nurse and doctor bills for the ward while he was confined in a hospital. The court had theretofore entered an order authorizing the guardian to expend a sum not to exceed $400.00 each month for the support and maintenance of the ward. It is the settled law of this State that a guardian has the right to pay claims theretofore approved after the death of the ward. Easterline v. Bean, 121 Tex. 327, 49 S.W. 2d 427. It is our opinion that the court did not err in allowing the guardian credit for this sum.

■ By their fourth point, appellants contend the court erred in refusing to amend the final account of the guardian and require him to show a claim in favor of the estate against National Surety Corporation for a refund of $218.35 on unearned premiums paid the company on the guardian's bond. C. E. Leatherwood was appointed guardian on June 19, 1940. His bond as guardian was filed and approved on June 19, 1940 with National Surety Corporation as his surety. The annual premium on such bond was $272.00 and was paid in advance each year. The ward died on August 31, 1945. The bond premium was paid for that year on June 19, 1945. It is the contention of appellants that the guardian should show a claim in his final account in the sum of $218.35 as unearned premium on the bond; that the proper method of computing such amount is by dividing $218.35 by 365 and multiplying by 72 (the number of days between the beginning of the new year and the death of the ward). The trial court found that the evidence was not sufficient to fix the amount of the claim for refund but based upon his own investigation, amended the final account to show a claim for refund in the sum of $149.05. Art. 4698a, Vernon's Ann. Civ.Stat., provides that every company authorized to write surety bonds is required to file with the Board of Insurance Commissioners a Manual of Classification, Rules and Rates, every rating plan and every modification thereof. It is our opinion that the amount of refund due under the bond is fixed by such manual and approved by the Board of Insurance Commissioners. This manual is not in the record. There is no way by which the trial court could have correctly determined the amount due on the unearned premium. It is our opinion that the burden rested upon the appellants to make the proof of such amount. Failing in this respect, the trial court was unauthorized to fix the amount of the claim. However, in view of the fact that the trial court did fix the amount of $149.05 and that the appellees do not complain of the judgment in this respect, we are constrained to uphold the action of the trial court. Consequently, this point is overruled.

■ By the sixth point, appellants complain of the refusal of the trial court to amend the final account of the guardian and require him to show a claim in favor of the estate against C. O. McMillan for $301.03 attorney's fees paid him in advance. Mr. McMillan was the attorney for the guardian and at the beginning of each fiscal year, the guardian paid him $375.00 in advance as attorney's fees for representing him in the guardianship proceedings. The guardian paid this amount to Mr. McMillan on June 19, 1945. The ward died on the 31st day of August, 1945. The court, in refusing to require the guardian to show a claim against Mr. McMillan for the unearned portion of this attorney's fees found "that the evidence fails to show any amount due as refund on attorney's fees paid to C. O. McMillan, there being no evidence as to the reasonable value of services rendered or the reasonable amount of such refund, if any." We believe the court was correct in making the above finding and its action in refusing to require the guardian to amend his final account showing such claim was correct under the facts and circumstances in this case.

■ By their eighth point, appellants contend that the trial court erred in refusing to charge the guardian with $125.00

commission paid to himself for collecting $2,500.00, principal of two notes on hand when he was appointed guardian, sold to or collected through the Federal Land Bank of Houston. We believe this point should be sustained. The $2,500.00 notes involved constituted a part of the corpus of the estate. The guardian is not entitled to any commission for collecting the corpus of the estate. Art. 4310 of Vernon's Ann.Rev. Civ.Stat. allows the guardian five per cent commission on the gross income of the ward's estate and on all money paid out. The proceeds of the $2,500.00 notes were not gross income. They were part of the corpus of the estate and the guardian was not entitled to collect any commission for collecting such notes. Gilbert v. Hines, Tex.Civ.App., 32 S.W.2d 876.

▮ Appellants, in their brief, group points eleven, sixteen, seventeen, eighteen, nineteen, twenty and twenty-four. These points complain of the action of the court in allowing the guardian credit for money expended by him for the support and maintenance of his ward. It is the contention of the appellants that the guardian expended from the corpus of the estate approximately $17,000.00 for support and maintenance of the ward without first having obtained an order directing such expenditure. It is the well settled law of this State that before the guardian is entitled to expend money from the corpus of the estate for the maintenance, education and support of his ward, he must first procure an order from the court authorizing such expenditure. Logan v. Gay, 99 Tex. 603, 90 S.W. 861; De Cordova et al. v. Rogers, 97 Tex. 60, 75 S.W. 16; Blackwood v. Blackwood's Estate et al., 92 Tex. 478, 49 S.W. 1045. We do not agree with the contention that the money was expended without an order of the court having first been obtained authorizing such expenditure. On August 7, 1940, Marie Allen Drake, guardian of the person, filed an application praying that she be allowed $140.00 per month out of the estate of her ward for his support and maintenance. This application was granted on August 7, 1940, and the court's order was duly placed upon the probate minutes of such court allowing the guardian the sum of $140.00

per month to cover such expenses. Thereafter, C. E. Leatherwood, guardian of the estate, filed an application in which it was alleged that his ward was sick and that the expenses of caring for him exceeded the $140.00 per month previously authorized and asked that the amount be increased to $190.00 per month, which application was duly granted by the court. Thereafter, on October 23, 1942, C. E. Leatherwood, guardian of the estate, filed an application for an increase of the amount for the support and maintenance of his ward and made known to the court that his ward was sick, confined to a hospital and that except for the care and nursing he received in said hospital, he would probably die; that the expense of maintaining said ward in the hospital would far exceed $190.00 per month, and that the reasonable and necessary expenses for his ward in his present condition were between $350.00 and $400.00 per month, and he asked that the order of the court for support and maintenance be increased to a sum not exceeding $400.00 per month. The court, on October 24, 1942, entered an order authorizing the guardian to expend for support, maintenance and medical care of the ward, a sum not exceeding $400.00 per month. The court further found in such judgment that said ward was in such a condition physically and mentally that it was necessary for him to be confined in a hospital, and that the expenses of his support and maintenance and medical care reasonably amounted to between $350.00 and $400.00 per month; that but for the expenditure of these sums of money and the care received by said ward, he would probably die, and that it was for the best interest of the ward that such expenses be allowed.

The record discloses that Henry O. Pemberton, the ward, was a man of advanced years; that he was of unsound mind and that for many months he was confined in a hospital in Ranger, Texas. The record further discloses that he was possessed of a considerable estate and that under the facts and circumstances as shown by this record, he was able financially to receive the very best care and attention that it was possible to obtain.

Although the order as entered by the court directing the guardian to expend the money for his support and maintenance from the estate does not specifically provide that it should be paid from "the corpus of the estate" and it is true that the guardian in no place stated that the income from the estate was insufficient to pay the expenses of the support and maintenance of the ward, however, when the applications and orders are construed together, and with the facts in this record, there is no doubt in our minds but what the county court intended to and did direct the guardian to expend these sums of money from the corpus of the estate. The guardian had the right to expend all of the income of the estate for the support and maintenance of his ward. He had no duty to apply to the court for an order to expend the income for support and maintenance. We, therefore, are of the opinion that the court did not err in giving credit to the guardian for the sums of money expended by the guardian for the support and maintenance of the ward.

By these points, the appellants further complain of the action of the court in crediting the guardian with certain sums of money paid by the guardian for the support and maintenance above the amounts authorized by the court.

C. E. Leatherwood, the guardian, in this case, operated a bank at Dublin, in Erath County, Texas. The hospital in which the ward was confined was located at Ranger, in Eastland County, Texas. Marie Allen Drake, during the time she was guardian of the person of Henry O. Pemberton, attended him while he was confined in the hospital. In the very nature of things, it cost a considerable sum of money to pay doctors, nurses, hospital bills and other reasonable and necessary expenses incurred in properly caring for the ward while he was confined in the hospital. The guardian of the estate did not pay the money for such expenses directly to the guardian of the person. He had a special bank account in his bank in Dublin and Marie Allen Drake would send the bills incurred and Mr. Leatherwood would pay such bills out of this special account. In a few instances, the amount of the expenses exceeded the amount deposited in this account as authorized by the court. Marie Allen Drake, on several occasions, overdrew this account in paying the necessary expenses incurred in the care of the ward. The bank carried these checks as cash items or in some instances, allowed the special account to become overdrawn. C. E. Leatherwood, the guardian of the estate, before he would pay these checks, from the main account of the guardianship, would procure an order from the county court authorizing the payment of these items.

The trial court found that all the money for which the guardian was given credit as money expended for support and maintenance was actually expended for such purposes and that the ward received the benefit thereof and that the same were necessary expenses for said ward. The trial court further found that these expenses complained of were emergency expenditures; that the ward was ill and confined in a hospital, and that the services, medical care, medicine and other items were absolutely necessary for the purpose of keeping the ward alive. We agree with the findings made by the trial court. The guardian may expend money out of the corpus of the estate without an order of the court for support and maintenance of his ward in cases of emergencies. Jones v. Parker, 67 Tex. 76, 3 S.W. 222. We can perceive of no greater emergency that might arise than the one shown by the facts in this case. Here was a man ill both in body and mind, possessed of a large estate, confined in a hospital, where without proper medical attention he would die. We believe that under these circumstances, the guardian of the estate was absolutely authorized to expend from the corpus of the estate any sum of money without an order of the court where an emergency existed such as in this case.

Appellants also complain of the action of the trial court in giving the guardian credit for these sums of money for the reason that C. E. Leatherwood, guardian of the estate, did not pay the money for the support and maintenance of his ward to Marie Allen Drake, the guardian of the person, but on the contrary,

paid most of it direct to the parties entitled thereto. We cannot agree with this contention. It is true Art. 4170 provides that where different persons have the guardianship of a person and estate of a ward, the guardian of the estate shall pay to the guardian of the person semi-annually a sum fixed by the court for the education and maintenance of the ward. We believe that this Article is directory rather than mandatory. The guardian of the estate might think it advisable to pay the guardian of the person money each month for the support and maintenance of the ward, or each year or every two years, and if he did so, he would still be entitled to credit for the sums expended. The statute provides that he may be compelled to pay the money semi-annually but it is our thought that the way and manner in which the money is expended is not material. Legler v. Legler, Tex.Civ.App., 189 S.W. 2d 505. If the guardian of the estate pays the money to the creditors under the direction of the guardian of the person, we believe that this is a substantial compliance with the statute and that the guardian of the estate is entitled to credit for money thus expended.

By points thirteen, twenty-five and twenty-seven, appellants contend the court erred in giving credit to the guardian for $11,175.53 paid out by him for support and maintenance of the ward after the death of Marie Allen Drake, guardian of the person. As heretofore stated, Marie Allen Drake died in September, 1942. After her death, C. E. Leatherwood, guardian of the estate, together with the heirs of Henry O. Pemberton, the appellants herein, appeared before the County Judge of Erath County and advised him of the death of Marie Allen Drake. There is evidence that the County Judge told Mr. Leatherwood to go ahead and act as guardian of the person, this conversation taking place in the presence of the appellants. Leatherwood thereafter acted as both guardian of the estate and of the person of Henry O. Pemberton. Henry O. Pemberton was at that time confined in a hospital in Ranger, and there remained until his death in 1945. The guardian expended the sum of money complained of for his support and maintenance. He did this under the order of the court. It is the contention of appellants that the guardian of the estate had no authority to pay these expenses direct to the people entitled thereto; that such expenditures should have been made through the guardian of the person and there being no guardian of the person, the expenditures were unlawfully made. The trial court found that C. E. Leatherwood was the de facto guardian of the person of Henry O. Pemberton. We agree with this finding. A de facto guardian or a guardian "de son tort" is recognized by the courts.

"If a guardian by nature takes the possession and administration of his ward's property, or if a mere stranger or wrongdoer takes possession of the property of an infant and receives the rents and profits thereof, he may be treated as a constructive guardian, and equity will compel him to account for the property as if he were guardian in fact. He is called a guardian de son tort, or 'by his own wrong.' While the purpose and effect of this rule is usually to cast upon the intruder a liability and facilitate its enforcement, yet if he acted in good faith, and discharged wholly or in part the duties which would have rested upon him if he had been a legal guardian, his right to charge proper expenditures against the funds in his hands has been recognized, * * *." 12 R.C.L., page 1112.

The trial court found, supported by ample testimony, that Mr. Leatherwood acted in good faith in all of his dealings with the estate. The record discloses that the money expended for the support and maintenance was necessary and that the ward received the benefit thereof. There is no question but that Mr. Leatherwood was of the opinion that he was the lawful guardian of the person of Henry O. Pemberton. This is shown in an application that he filed in the court during such time in which he stated that he was both guardian of the person and the estate of Henry O. Pemberton. A de facto guardian or guardian de son tort is recognized in Texas and many other jurisdictions. Neblett v. Val-

entino, 127 Tex. 279, 92 S.W.2d 432; Kies v. Brown, 222 Iowa 54, 268 N.W. 910; Alsabrook v. Bishop, Tex.Civ.App., 295 S. W. 646; Rear v. Olson et al., 219 Wis. 322, 263 N.W. 357; Alexander v. Hillebrand, 140 Mich. 490, 103 N.W. 849, 112 Am.St.Rep. 417; 25 Am.Jur., page 8, Sec. 4; In re Cameron's Estate, 157 Mich. 398, 122 N.W. 278.

If we should be mistaken in holding that Leatherwood was a de facto guardian of the person of Henry O. Pemberton, we believe there is another reason why he is entitled to credit for the sums of money expended for the support and maintenance of his ward after the death of Marie Allen Drake, guardian of the person. Henry O. Pemberton at the time of the death of the guardian of the person, was confined in a hospital at Ranger; he never left such hospital after her death. From this record we are constrained to hold that there was no necessity for a guardian of the person at any time after the death of Marie Allen Drake. The law recognizes that under some circumstances there might not be any necessity for a guardian of the person. Art. 4272, Rev.Civ. Stat. provides that if it be found by a jury that a defendant is of unsound mind, the court shall, upon application, proceed to appoint a guardian of the person and estate (or either) of such defendant. Art. 4228, Rev.Civ.Stat., provides that when a guardian dies, on application, the court shall appoint another if there be necessity therefor. We can see no necessity in this case for a guardian of the person. The guardian of the estate could and did pay the necessary expenses for the support and maintenance of his ward. The ward was under the care and supervision of the people in charge of the hospital at Ranger, and so far as this record shows, he received the very best attention and care.

We find no authorities holding that the guardian of the estate cannot pay direct to the creditors money for support and maintenance of his ward. We, therefore, hold that even if C. E. Leatherwood was not a guardian de facto of the person of Henry O. Pemberton, he was nevertheless entitled to credit for such sums of money as he lawfully expended for the support and maintenance of his ward after the death of the guardian of the person.

We believe the court did not err in allowing the guardian credit for $68.00 which was five per cent commission paid himself on the sum of $1,360.00 paid out by him as premium on his guardian's bond and for $381.89, five per cent commission on $7,637.99 expended for support and maintenance of the ward, and for $517.87, five per cent commission on money paid out by him direct or to the personal guardian, Marie Allen Drake. Art. 4310, Rev. Civ.Stat., provides that the guardian shall be entitled to five per cent on all sums of money paid out. These points are over-ruled.

Appellees filed a plea of res judicata to the bill of review filed by appellants and alleged therein that all of the parties who might be affected by the judgment were not parties to the bill of review and that it was a collateral attack upon the judgments, orders and proceedings in the guardianship. Such plea was by the court overruled. By counter points, appellees urge that the trial court committed error in overruling said plea. We have carefully considered these points and find no merit in them and the same are accordingly overruled.

We have carefully considered all points raised by appellants. We find errors not presented in any of them except point eight which we sustain.

The judgment of the trial court is reformed so as to charge the guardian with $125.00 commission paid him for collecting $2,500.00 of the principal on two notes sold to the Federal Land Bank.

The judgment in all other respects is affirmed.