NO. 12-03-00015-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




HARTFORD CASUALTY

INSURANCE COMPANY,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 PROBATE COURT NUMBER ONE OF


GEORGE ROBERT MORTON,

APPELLEE
§
 TARRANT COUNTY, TEXAS






OPINION


 Hartford Casualty Insurance Company ("Hartford"), in its capacity as a surety, appeals a
summary judgment granted in favor of George Robert Morton ("Morton"), in his capacity as
independent executor of the estate of James McNeal Clark, in the amount of $73,492.06. In two
issues, Hartford contends the probate court erred in granting Morton's motion for summary judgment
and denying its own. We affirm.


Background


 In 1992, James McNeal Clark ("Clark") made a will naming Morton as the sole devisee and
also naming Morton as the independent executor of his estate. (1) In August of 1997, Clark's son,
Larry Land ("Larry"), filed an application in the Tarrant County probate courts to be appointed as
Clark's temporary guardian. (2) Larry's application was denied because he is a convicted felon. In
May of 1998, attorney Roger S. Jones ("Jones") filed an application in Tarrant County Probate Court
Number Two ("Probate Court # 2") requesting that Sharon Land ("Sharon") be appointed Clark's
temporary guardian. (3) Sharon was married to Larry and was therefore Clark's daughter in law. On
May 21, 1998, the Probate Court # 2 entered an order appointing Sharon as Clark's temporary
guardian and stating thirty specific powers that Sharon possessed as temporary guardian (the "May
21 order"). Power number 26 was the power "[t]o pay all bills, including insurance premiums, and
make any and all reasonable and necessary expenditures from the estate." At the same time, the court
appointed Peter H. Keim ("Keim") as Clark's attorney ad litem. (4) One week later, on May 28, the
court entered an order extending the temporary guardianship (the "May 28 order"). The powers listed
in the May 28 order were identical to those in the May 21 order. Keim questioned Jones specifically
about the language of enumerated power number 26 because it did not seem to be limited. Jones told
him that this was standard language, that he would explain it to Larry and Sharon, and that any
expenditures from Clark's estate would require a further court order. On July 16, Jones told Keim
that Clark had terminal cancer and did not have long to live. Keim did not want to incur any
unnecessary attorney's fees and, therefore, he was not active in the case for several months after his
conversation with Jones.

 On November 11, Clark's eighty-fifth birthday, the Gardens Care Nursing Home contacted
Keim about Clark. Keim then telephoned Sharon about Clark's situation. During their conversation,
Sharon told Keim about improvements made to Clark's house located at 4020 Ryan Avenue in Fort
Worth. Keim wanted to see the improvements because he had not seen any orders from the court
permitting an expenditure of funds and from what Sharon told him, he believed significant
construction had been performed on Clark's house. On November 12, Keim visited Clark's house.
Larry and Sharon, who were living in the house, gave Keim a tour and even showed him a photo
album documenting all stages of the remodeling. During the tour, they also showed Keim a new
computer and a parrot. Keim was shocked by what he had been shown and immediately phoned
Jones in the presence of Larry and Sharon. Sharon began crying and Larry became angry, making
negative comments about Jones. The next day, Keim sent Jones the following letter:


 November 13, 1998


 Mr. Roger S. Jones, P.C.

 Attorney At Law

 2263 8th Ave.

 Fort Worth, Texas 76110-1896


 Re: James McNeal Clark Guardianship


 Dear Mr. Jones:


 In July of this year, you informed me that you had been told that Mr. Clark had cancer, and
that you thought it might be terminal. As a result, you suggested that there may not need to be a
permanent guardianship hearing, and that we await the developments on Mr. Clark's health.


 After waiting for several months, I decided yesterday to visit Mr. Clark and the temporary
Guardian to get an update on the status of Mr. Clark and his estate. Unfortunately I was not able to
visit with Mr. Clark or review his medical records due to an overly cautious administration at the
nursing home. This is a matter that I would ask for your assistance. If you could talk with the nursing
home and straighten this out I would appreciate it.


 I did, however, find out from Sharon and Larry Land that Mr. Clark is not, in fact, suffering
from cancer, nor is he terminal. Unfortunately, when I visited with Sharon and Larry, I found out that
they had expended a substantial amount of Mr. Clark's money on the refurbishing of Mr. Clark's
house. While some of the repairs were no doubt necessarily performed in the reasonable maintenance
of Mr. Clark's home, much of the work that was done would not, in my view, qualify as reasonable
or necessary.


 As I understand it, the Lands spent around $30,000.00 from Mr. Clark's account on these
repairs without the prior approval of the Court, and certainly without my knowledge. This, of course,
may create some serious difficulties for your clients. Their response to me was that they were advised
by you that the Court had preapproved this work. They also said that the reason for this expenditure
was so that they would "spend down" Mr. Clark's estate in order to qualify him for medicaid, and to
set up a "Miller" trust. They informed me that their actions were directed by you, and that they only
acted under your advise[sic]. Whether this is the case or not, I am not going to speculate. I will leave
that for the court.


 Since the Nursing home will not let me talk with Mr. Clark, I am unable to ask him for his
opinion on this matter. However as his attorney, and until further developments in this case, I wait to
register my objection to the actions of your clients, and request that you advise them that they are not
to spend anymore of Mr. Clark's money unless and until I have had the opportunity to voice my
objections, if any, and the Court has approved same.


 As I understand it from speaking with the Lands, Mr. Clark's bank account has been reduced
from over $90,000.00, per the last submitted inventory, to approximately $2,000.00. To my belated
knowledge, a substantial part of this amount has not been approved by the Court. While the value of
Mr. Clark's home has, no doubt, been increased, I am not qualified to evaluate the present value of
the home. As a result, I do not know the true state of Mr. Clark's present estate.


 Therefore, I am requesting that you provide me with an itemized list of all funds, from Mr.
Clark's estate, that were expended by your clients since the granting of the temporary guardianship
in Sharon Land, including copies of the receipts in connection thereto, and any bid proposals that were
submitted for any work. I would also like an updated inventory showing the current state of Mr.
Clark's estate, and a copy of all bank statements for Mr. Clark from the inception of the temporary
guardianship. If there are any Court orders permitting the expenditures of funds, I would like a copy
of these as well.


 I understand that you are going to file a motion with the Court to ratify the expenditures to
date after you have spoken with your clients on the 18th of this month. I would like to have the above
requested documents well in advance of the hearing on your motion, so I would appreciate your
prompt response to my requests. I know this will all take some time. However, in order to preserve
what remains of Mr. Clark's estate, and to complete this guardianship, I would like to have this matter
expedited as much as is reasonably practicable.


 Please let me know at your earliest [convenience] whether or not you have any objection to
this informal discovery request. I will do what I can to work these matters out in a mutually agreeable
way. I would also ask that you call the nursing home to get their cooperation with me before I resort
to the Court.


 Sincerely,


 /s/


 Peter H. Keim


 /pk


 On January 6, 1999, Jones provided Keim with an itemized list of expenditures which Sharon
had prepared. The next day, January 7, Keim filed an emergency motion for Sharon's removal as
temporary guardian because of the wasting of Clark's estate and requested the appointment of a
successor temporary guardian. On January 8, Probate Court # 2 appointed Tom Henry ("Henry")
as guardian ad litem. On February 3, 1999, Henry filed an emergency motion to remove Sharon as
the temporary guardian of Clark's estate. On February 11, Sharon filed a resignation as temporary
guardian of Clark's estate. On February 22, 1999, the probate court entered an "Agreed Order
Accepting Resignation of Personal Representative and Appointing Successor." This order
specifically stated, in part, as follows:


 4. That effectively immediately, Tom Henry, an attorney licensed to practice before this Court and
in all courts of the State of Texas, should be appointed to serve as Successor Temporary Guardian of
the Estate of James McNeal Clark, after posting a corporate or personal bond in the amount of
$2,000.00, and otherwise qualifying in accordance with law;


 ....


 IT IS, THEREFORE, ORDERED ADJUDGED AND DECREED by the Court that Sharon Land
should be, and is hereby, permitted to resign, effective immediately, from her capacity as Guardian
of the Estate; provided, however, that Sharon Land shall not be discharged, and her surety shall not
be released, until any deficiency determined in connection with the Final Accounting to be filed herein
is satisfied;....


 On April 6, 1999, Sharon filed her account for final settlement. On April 14, Henry, as
successor temporary guardian of Clark's estate, filed his objections to Sharon's account. Henry
complained that Sharon had made unauthorized expenditures from Clark's bank accounts, which
were worth $90,774.57 at the time of her appointment as temporary guardian, and had left a balance
of $1,700.00. Specifically, Henry alleged that, without court approval, Sharon had remodeled
Clark's house; purchased a 1996 Jeep Cherokee with a number of extras, a new computer with
peripherals, a parrot for over $1,000.00, and a utility trailer; paid personal living expenses; and even
made gifts to charities. On April 29, Sharon filed a first amended account for final settlement. Henry
objected to this amendment on May 5. 

 On June 7, 1999, Clark died. A will contest ensued. On August 27, 2000, the Tarrant
County Probate Court Number One ("Probate Court # 1") entered an order on the account for final
settlement Henry had filed as the successor temporary guardian of Clark's estate. The order
approved the account and discharged Henry. The order then stated that the remaining guardianship
assets would not be delivered to anyone until the will contest was resolved. On November 15, 2000,
Clark's will was finally admitted to probate and Morton took his oath of office as independent
executor of the estate. 

 On February 14, 2001, Morton sued Sharon in Probate Court # 1 for her unauthorized
expenditure of funds from Clark's guardianship estate. Sharon filed a counterclaim in November
of 2001 against Morton, both individually and as independent executor of Clark's estate, seeking
$78,408.00 for her nursing care of Clark. Morton moved for a summary judgment against Sharon
in the amount of $78,492.06 for her unauthorized expenditures. Hartford, as surety on Sharon's
guardianship bond, filed a motion for partial summary judgment asking the court to determine that
as a matter of law Sharon had the authority to expend Clark's funds. As support for its motion,
Hartford relied on provision number 26 in the May 21 and May 28 orders, which stated that Sharon
had the authority "[t]o pay all bills, including insurance premiums, and make any and all reasonable
and necessary expenditures from the estate." In the alternative, Hartford pleaded that Sharon's
expenditures were reasonable and necessary. Hartford made the same allegations in its response to
Morton's motion for summary judgment.

 On August 5, Probate Court # 1 entered a partial summary judgment granting Morton's
motion for summary judgment and awarding Morton $73,496.06 along with post-judgment interest
and court costs. The order denied Hartford's motion for partial summary judgment. Sharon's
counterclaim for $78,408.00 was set by the court to be tried as an independent cause of action on
September 9, 2002. On August 23, 2002, Larry and Sharon filed a chapter 13 petition with the
United States Bankruptcy Court for the Northern District of Texas, Fort Worth division. On
November 25, 2002, after the bankruptcy stay was lifted, the Probate Court # 1 severed the partial
summary judgment in favor of Morton making it a final judgment as of that date. Hartford then
timely filed its notice of appeal from Morton's partial summary judgment.


Standard of Review


 In a traditional motion for summary judgment, we apply the following rules in reviewing a
summary judgment record:


 1) The movant for summary judgment has the burden of showing that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law.


 2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence
favorable to the nonmovant will be taken as true. 


 3) Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved
in its favor. 


Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). When both sides move for
summary judgment and the trial court grants one motion and denies the other, the reviewing court
should review the summary judgment evidence presented by both sides and determine all questions
presented. Commissioner's Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). In
so doing, we first review the order granting summary judgment. See Tobin v. Garcia, 159 Tex. 58,
64, 316 S.W.2d 396, 400 (1958). We review the trial court's action in overruling the denied motion
only if we determine the order granting summary judgment was erroneous. See id.



Morton's Motion for Summary Judgment


 In its first issue, Hartford contends that the trial court erred in granting Morton's motion for
summary judgment. In its second issue, Hartford contends that the trial court erred in denying its
own motion for partial summary judgment. More particularly, Hartford contends the trial court made
an error of law because Sharon had the authority under the court's May 21 and May 28 orders to
make any expenditure that was reasonable and necessary without further order of the court. We
therefore consider Hartford's two issues together.

Authority of Guardian to Spend Corpus of Estate

 An adult individual is incapacitated when, because of a physical or mental condition, the
individual is substantially unable to provide food, clothing, or shelter for himself or herself, to care
for the individual's own physical health, or to manage the individual's own financial affairs. Tex.
Prob. Code Ann. § 601(14)(B) (Vernon 2003). A ward is an incapacitated person for whom a
guardian has been appointed. See Tex. Prob. Code Ann. § 601(31) (Vernon 2003). A guardian is
a statutory office appointed by the probate court to guard the interests of his ward and to provide for
his education and maintenance. Decker v. Wiggins, 421 S.W.2d 189, 192 (Tex. Civ. App.-Fort
Worth 1967, no writ). The purpose of a temporary guardianship is to promote and protect the
wellbeing of a person who may be incapacitated. See Tex. Prob. Code Ann. §§ 602 (Vernon 2003),
875 (Vernon Supp. 2004); see also Overman v. Baker, 26 S.W.3d 506, 509 (Tex. App.--Tyler 2000,
no pet.).

 A guardian's powers and duties on behalf of a ward are found in the Texas Probate Code. 
See Decker, 421 S.W.2d at 192. Guardianships are also governed by the laws and rules in the Texas
Probate Code that apply to decedents' estates. Tex. Prob. Code Ann. § 603(a) (Vernon 2003). The
Probate Code creates two types of administrations for decedents' estates. In an independent
administration, the will is probated, an order appointing an independent executor is entered by the
probate court, and an inventory, appraisement, and list of claims is filed by the executor. See Tex.
Prob. Code Ann. § 145(h) (Vernon 2003). After the inventory, appraisement, and list of claims is
approved by the probate court, no other court action is necessary. See id. On the other hand, an
administrator in a dependent administration must receive prior court approval of the actions taken
in administering the estate unless otherwise provided by statute. See, e.g., Tex. Prob. Code Ann.
§§ 234(a), 331 (Vernon 2003); but see, e.g., Tex. Prob. Code Ann. §§ 234(b), 359 (Vernon 2003)
(specifying certain actions that may be taken without court order). Section 234 of the Probate Code
specifies the powers that an administrator in a dependent administration can exercise with and
without court order. See Tex. Prob. Code Ann. § 234 (Vernon 2003). These are virtually the same
powers that a guardian can exercise with and without specific court authority as enumerated in Texas
Probate Code section 774. See Tex. Prob. Code Ann. § 774 (Vernon Supp. 2004). It is therefore
apparent that a guardianship is intended to be similar to a dependent administration rather than an
independent administration.

 Hartford contends that the court's order allowing Sharon to "make any and all reasonable and
necessary expenditures" from the estate was all the authority she needed from the probate court to
spend the corpus of Clark's estate. As support for its argument, Hartford refers us to Section 876
of the Texas Probate Code which in part states that "[t]he order shall be evidence of the temporary
guardian's authority to act within the scope of the powers and duties set forth in the order." Tex.
Prob. Code § 876 (Vernon 2003). Hartford has also pointed us to numerous statements by Sharon
indicating that she believed power number 26 in the May 21 and May 28 orders of the probate court
allowed her to make expenditures from the corpus of Clark's estate that she thought were necessary.

 Morton responds that the provisions of the Probate Code which apply to permanent
guardianships also apply to temporary guardianships. See Tex. Prob. Code § 877 (Vernon 2003). 
Specifically, Morton contends that only section 774(b) specifies what the guardian of an estate may
do without a previous court order. That section states as follows: 


 (b) The guardian of the estate of a person, without application to or order of the court, may exercise
the following powers provided, however, that a guardian may apply and obtain an order if doubtful
of the propriety of the exercise of any such power:


 (1) release a lien on payment at maturity of the debt secured by the lien;


 (2) vote stocks by limited or general proxy;


 (3) pay calls and assessments;


 (4) insure the estate against liability in appropriate cases;


 (5) insure property of the estate against fire, theft, and other hazards; and


 (6) pay taxes, court costs, and bond premiums.

Tex. Prob. Code Ann. § 774(b) (Vernon Supp. 2004).

 It has long been the established law in Texas that before a guardian is entitled to spend money
from the corpus of the estate for the maintenance, education and support of his ward, he must first
procure an order from the court authorizing such expenditure. Pemberton v. Leatherwood, 218
S.W.2d 500, 504 (Tex. Civ. App. - Eastland 1949, writ ref'd n.r.e.). It is clear from sections 774 and
776 of the Probate Code that this long-established procedure still applies, although with certain
specified exceptions. After written application to the probate court, the guardian may, if authorized
by a court order, purchase or exchange property, take a claim or property for the use and benefit of
the estate in payment of a debt due or owing to the estate, compound a bad or doubtful debt due or
owing to the estate, make a compromise or settlement in relation to property or a claim in dispute
or litigation, compromise or pay in full secured claims, abandon worthless or burdensome property,
or purchase a prepaid funeral benefits contract. Tex. Prob. Code Ann. § 774(a) (Vernon Supp.
2004). Section 776(a) authorizes a guardian to expend the net income of the estate for the ward's
education and maintenance without court order. Tex. Prob. Code Ann. § 776(a) (Vernon 2003). 
 However, a guardian may not expend corpus unless directed to do so by the court. See id. Section
776(b) creates an exception to the general rule and allows a guardian to expend corpus when it is not
convenient or possible for the guardian to first secure court approval. See Tex. Prob. Code Ann.
§ 776(b) (Vernon 2003). However, that authorization is limited to $5,000.00 per ward during an
annual accounting period, unless the expenditure is made to a nursing home in which case the court
may ratify any amount. Id. Furthermore, the court can ratify these expenditures only upon clear and
convincing proof of the circumstances specified in the statute. Id. 

 A court may confer upon a party only such powers as are authorized by the constitution or
by statute. See Goodman v. Summit at Westrim, L.T.D., 952 S.W.2d 930, 933 (Tex. App. - Austin
1997, no writ). Furthermore, the authority of a probate court cannot be enlarged by a request from
a guardian that the court exceed its powers. See Burke v. Satterfield, 525 S.W.2d 950, 953 (Tex.
1975). Therefore, in light of the limitations of Section 776(b), the probate court could not
preauthorize an unlimited expenditure of corpus for Clark's reasonable and necessary expenses
during the only annual accounting period in which Sharon was temporary guardian. See Tex. Prob.
Code Ann. § 776(b). Consequently, the May 21 and May 28 orders did not authorize Sharon to
spend tens of thousands of dollars out of the corpus of Clark's estate without first securing specific
court approval. Id. We hold that a temporary guardian does not have authority under the Probate
Code to make reasonable and necessary expenditures out of the corpus of a ward's estate without
first securing written approval of the probate court except as provided in Section 776(b).

Reasonable and Necessary Expenses

 Hartford contends that the probate court could not enter a summary judgment in favor of
Morton because Hartford was entitled to have a fact finder determine which of Sharon's expenditures
were reasonable and necessary. 

 As we have noted before, when a guardian has not received prior court approval for
expenditures from corpus, a trial court can ratify expenditures for reasonable and necessary expenses
in an amount not exceeding $5,000.00 per accounting period. Tex. Prob. Code Ann. § 776(b). 
Here, Morton initially sought to have the court determine that Sharon did not have authority to spend
$78,492.06 of the corpus of Clark's estate. However, in entering his order, Visiting Probate Judge
Mike Wood stated that he was allowing the maximum $5,000.00 for Sharon's expenditures during
her only annual accounting period as temporary guardian and that the judgment would be for
$73,492.06 rather than the full amount sought. Hartford's only response, other than the fact that
Sharon had authorization by reason of the May 21 and May 28 orders, was that her expenditures
from the corpus of Clark's estate had been reasonable and necessary. Because the court allowed the
maximum amount of reasonable and necessary expenses that it could under the Probate Code,
Hartford was not entitled to any further determination by a fact finder. See Tex. Probate Code
Ann. § 776(b). 

 Hartford also contends that the summary judgment evidence shows that part of the
$73,492.06 awarded in the judgment was actually from the income of Clark's estate and therefore
could be spent by Sharon without court authorization. See Tex. Prob. Code Ann. § 776(a). 
However, Hartford did not present this issue to the probate court before the hearing on the summary
judgment. A nonmovant must now, in a written answer or response to the motion, expressly present
to the trial court those issues that would defeat the movant's right to a summary judgment and failing
to do so, may not later assign them as error on appeal. City of Houston v. Clear Creek Basin
Authority, 589 S.W.2d 671, 679 (Tex. 1979). Hartford also contends that a portion of the 


 


$73,492.06 judgment included nursing home expenses which may be ratified by the probate court
in any amount. See Tex. Prob. Code Ann. § 776(b). Again, this argument fails because ratification
was not presented in a written answer or response to Morton's summary judgment motion or in its
own summary judgment motion. See Clear Creek, 589 S.W.2d at 679. 

 

Conclusion


 The trial court did not err in granting summary judgment in favor of Morton. Accordingly,
Hartford's issues one and two are overruled. Having overruled Hartford's two issues, the judgment
of the trial court is affirmed.

 JAMES T. WORTHEN 

 Chief Justice

Opinion delivered March 24, 2004.

Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.






















(PUBLISH)
1. At oral argument, it was explained Morton was Clark's long-time friend and neighbor.
2. At oral argument, it was revealed that Larry was Clark's adopted son.
3. Jones was certified by the Texas Board of Legal Specialization in Probate and Estate Planning in 1995.
4. At oral argument, Morton's attorney represented that his client had attempted to become involved in
Clark's guardianship proceedings, but had been prevented from doing so by the probate court.